**STATE of Tennessee, Appellant,**

v.

**Debra Lynn FISHER and Dennis Wayne Miller, Appellees.**

**No. 849.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 30, 1982.

Permission to Appeal Denied by Supreme Court May 2, 1983.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Sr. Asst. Atty. Gen., Nashville, for appellant.

Donald R. Coffey, Knoxville, for appellees.

OPINION

O'BRIEN, Judge.

The State appeals from an adverse ruling on a motion to suppress evidence which effectively terminated the prosecution of defendants on indictments charging them with burglary, larceny, receiving and concealing stolen property.

Defendants filed a motion to suppress alleging that a search and seizure was conducted without a search warrant and was not incident to a lawful arrest. Subsequent to a hearing of this motion the trial court ruled (1) that defendants had standing to challenge the search which was made, and (2) the warrantless search of a motel room by the police was unreasonable and the evidence obtained by virtue of the search must be suppressed.

The trial judge heard the evidence in this case in two phases. First, on the issue of standing, the only evidence offered by defendant was through the testimony of Willis Franklin Hutson who testified that he had been away from home after some domestic differences with his wife and had rented a room at a Sheraton motel for the purpose of cleaning up under the name of Larry Hunley. After having accomplished this purpose he had no further use for the room and gave the key to his friend Dennis Miller who needed a place to stay. On cross-examination he admitted that sometime after defendant's arrest he might have told a police officer in jest that he had engaged in sex with Fisher in the motel room.

On the issue of defendants' legitimate expectation of privacy in the motel room the State relies on our opinion in *Nolan v. State,* 588 S.W.2d 777, (Tenn.Cr.App.1979) for the proposition that an appellant not registered as the occupant of the room has no legitimate expectation of privacy in that room. This is a reasonable statement of the law insofar as it goes but as we said in *Nolan,* we recognize there is no set form for determining whether a search is reasonable or not, for all searches must depend on their own facts and circumstances.

■ The trial judge found that defendant Miller was a very close friend of the person who rented the room. After Hutson had fulfilled his purpose in renting the room he gave the key to Miller, and turned the room over to him and Fisher because they had no place to stay at the time. In a statement given to the police, within a few hours after the search was made, Hutson

reiterated this fact. There was no evidence offered to show that either Miller or Fisher knew in any way that Mr. Hutson had registered under a false name. The court found, and we agree, that defendants were invitees of Hutson, who allowed them to stay in or temporarily use the room, and so they had a legitimate expectation of privacy which warranted their objection to the admission of evidence discovered by the police in a warrantless entry.

The State also places some reliance on *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). We think this reliance is misplaced. *Rakas* dealt specifically with an automobile search where the passenger occupants made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the vehicle where seized items were found. The court held they were not entitled to suppression of seized items in their subsequent robbery prosecution. In their decision the Supreme Court was particularly careful to note, "It is unnecessary for us to decide here whether the same expectations of privacy are warranted in a car as would be justified in a dwelling place in analogous circumstances. We have on numerous occasions pointed out that cars are not to be treated identically with houses or apartments for Fourth Amendment purposes." Although the court in *Rakas,* supra, did partially, and subsequently in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), totally overrule the automatic standing rule of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), they differentiated in *Rakas* between an automobile search and a search of a dwelling place by stating that *Jones* involved significantly different factual circumstances. *Jones* not only had permission to use the apartment of his friend, but also had a key with which he admitted himself and kept possessions in the apartment. He had complete dominion and control over the apartment to the exclusion of all others except its owner.

■ In a further hearing to determine the reasonableness of a purported search of

the room and the seizure of certain items of evidence it was developed that a business establishment in the near vicinity of the motel had been burglarized. The officers investigating the burglary received a report that a dark colored van had been observed at the scene of the crime. The description included some of the digits on the vehicle license plate. Shortly after the investigation got underway a police officer discovered the suspect vehicle in the motel parking lot. Looking through the van window the police noticed some bags of marijuana laying between the driver's seat and the passenger seat in the front of the vehicle. Entering the van to secure the marijuana they found a quantity of other drugs. A license check indicated the vehicle was owned by Donald Miller. One of the officers making the investigation was acquainted with both Donald Miller and his brother, this defendant. Defendants were apprehended on a stairwell inside the motel. Miller told the officers the van belonged to his brother and he was not driving it. He said he was visiting Mr. Hutson in Room 104. After checking the motel register the police determined that Room 104 was registered to a Mr. Hunley. Accompanied by a security guard a number of police officers proceeded to Room 104, taking defendants with them. The security guard used a master key to unlock the door. One of the police officers testified that as the door opened he was able to see clothes hanging on a rack which fit the description, style and pattern of those stolen from the Whiteway Store. Some of this clothing had price tags attached. After viewing the clothing they entered the room and discovered several musical instruments which they determined had been stolen in other burglaries.

In holding that the search was unreasonable, the trial judge carefully reviewed the evidence and considered the five basic exceptions to the requirement for a search warrant and found that the only possibility of sustaining the search was on probable cause with exigent circumstances. Clearly there was no consent in this matter. The arrest of defendants occurred on the stairwell far removed from any proximity to Room 104. There was not the remotest prospect to be gleaned from the evidence that hot pursuit was involved, nor was this a stop and frisk situation. Insofar as exigent circumstances are concerned the court below found that with the number of officers available at the scene there was no reason why the motel room could not be secured while a search warrant was obtained. He held the search was unreasonable and granted the motion to suppress. We have found nothing in this evidence which preponderates against his ruling.

We hold that the trial judge was correct in his conclusion that the defendants had a legitimate expectancy of privacy in the motel room and that the subsequent search of the room by law enforcement authorities was unreasonable in the absence of a warrant.

The judgment of the trial court is affirmed.

WALKER, P.J., concurs.

DWYER, J., dissents.

DWYER, Judge, dissenting.

I would sustain the State's appeal, reverse the trial court's judgment, and remand this record for trial.

In the first instance, I would adhere to our holding in Nolan v. State, 588 S.W.2d 777, 779 (Tenn.Cr.App.1979), when we said the following:

"We will first evaluate the search of the motel room. We think that since the appellant was not registered as the occupant of Room 118 he lacks standing to attack the search. Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)."

I will concede, however, that the quoted portion is a simplification of a complex problem when discussing "a legitimate expectation of privacy" question. I am also satisfied that the standing theory of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), with the advent of Rakas v. Illinois, supra, has been relegated to the past as has the horse and buggy.

The majority reasons that since the appellees were "invitees" of Huston, they had a legitimate expectation to privacy in their use of the motel room. With this assumption I cannot agree.

Hutson rented the motel room on December 10, 1980, as he related, for the sole purpose of cleaning up. He used the fictitious name of Larry Hunley, told the desk clerk there was only one in his party, and paid a single fare rate. He testified that when he had finished with the room he gave the key to and turned the room over to the appellees for they needed a place to stay. It is unarguable that the appellees would subjectively feel that they had an expectation of privacy, but that does not sustain the requirement of legitimacy. If that were the criteria, every person everywhere at any time would be immune from intrusion based on their interpretation of privacy. This is not the law and can never be the law.

When Hutson rented and paid for the room for his own use, he was thereby clothed with a legitimate expectation of privacy on those premises. He could not under those circumstances ladle out *his* expectation of privacy to the appellees. It must be remembered that Fourth Amendment rights are personal and may not be asserted vicariously. *Rakas v. Illinois, supra,* 439 U.S. at 133–134, 99 S.Ct. at 425. In short, his legitimate expectation of privacy began and ended with the contract that he struck with the motel management, *i.e.,* he rented the room for himself for one day to "get cleaned up."

In equating privacy to the appellees, the trial court related that if two friends were on a trip and the first friend registered but the second friend was with him, both would have an expectation of privacy in the room. I will concede this may be true if the first friend properly registered—informed the clerk that there was a party of two and paid the rate for two—and used the premises for a legitimate purpose. Under those circumstances they would both have a legitimate expectation of privacy; however, that is a far cry from the evidence here.

The facts reveal that not only did the appellees not have any possessory interest in the room via an agreement with the motel, but also that the appellees asserted to the arresting officers that they were merely visiting a Mr. Hutson in Room 104. The facts also reveal that Hutson admitted to one of the officers that he rented the room to engage in prostitution with Fisher. While the trial court ruled that this evidence was not relevant, it was proffered by the State and reflected that Hutson, a married man, had asked the officer not to make him "write it down." This factor was relevant since the trial court had to decide on the basis of all the factors whether the privacy is one that a free people may legitimately expect and is one that society is prepared to recognize as *reasonable.* See *Rakas v. Illinois, supra,* at page 151, 99 S.Ct. at 434 (Powell, J., concurring). That factor as well as the factor that he used a fictitious name to register are neither more nor less than factors from the whole ball of wax to be used by the trial court in considering whether appellee's expectation of privacy guaranteed by the Fourth Amendment was a "reasonable" one. Under these circumstances appellee's expectation of privacy was neither lawful nor reasonable.

Viewed in the most favorable light to the appellees, the evidence may support an argument that they were legitimately on the premises as guests, but certainly not that they had a legitimate or reasonable expectation of privacy in regards to the motel room. In the absence of such, the discovery of the stolen merchandise in the room coupled with appellee's statement that they had been in the room raises a classic question of fact for a jury to determine their guilt or innocence at trial. I would reverse the trial court's erroneous granting of appellee's motion to suppress the evidence.